**Paul S. DOPP, Plaintiff,**

v.

**FRANKLIN NATIONAL BANK et al.,
Defendants.**

**No. 71 Civ. 4411.**

United States District Court,
S. D. New York.

Nov. 20, 1971.

Rosenman, Colin, Kaye, Petscheck, Freund & Emil, New York City, for plaintiff.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendants.

### MEMORANDUM and ORDER

BRIEANT, District Judge.

Plaintiff seeks a preliminary injunction pending trial of the action, enjoining defendant Franklin National Bank ("Franklin") from selling or otherwise transferring 51,500 shares of the common voting stock of Butler Aviation International, Inc. ("Butler") and any other defendant to whom Franklin may have transferred such shares from "transferring or voting such shares".

A temporary restraining order was granted October 18, 1971 by this Court (Gurfein, J.) and was continued by the undersigned Judge on the argument of the motion. Security in the amount of $25,000 has been posted.

The shares involve approximately 5% of the total outstanding. Plaintiff claims to be the largest owner of the common stock of Butler, holding over 190,000 shares (18% thereof).

Franklin had previously made loans to plaintiff in excess of $1,050,000.00. After some period of time, during which payments on account had been made, on December 16, 1970, Franklin obtained a judgment by default in the amount of $369,447.61 against plaintiff, later reduced by stipulation to $328,045.25. In addition to the 51,500 shares of Butler stock, Franklin holds as collateral second mortgages on two Pepsi Cola bottling plants in Michigan, which mortgages, however, may be subject to some infirmity arising out of an outstanding possible claim by plaintiff's wife. The total collateral is said to be in excess of the indebtedness. Since the entry of the judgment, plaintiff has made further sporadic payments on account of his obligations to Franklin, which, however, remain substantial, and presently in excess of $281,000.00 to be paid by the proposed purchasers.

It is undisputed that Franklin acts as the transfer agent for shares of Butler, and as a lender to Butler in substantial amounts.

Plaintiff was formerly an officer of Butler and is said to be engaged at this time in a proxy contest for control of Butler, although it is difficult to conceive how a person against whom such a substantial unpaid judgment is outstanding, may successfully conduct a proxy contest for control of a publicly held corporation.

The 51,500 shares of Butler stock, 5% of the total outstanding, are, under the circumstances of this case, unique. Franklin made some efforts to sell on the market, and inquiries indicated that the block could not be sold on the open market without substantially depressing the value thereof, and that the market was "thin" (Franklin's Supplemental Memorandum, p. 16, Sutherland transcript of deposition p. 79). If the market is so thin that a block of this size cannot be *sold* without unduly depressing the market, then it follows logically that a block of the size involved cannot be purchased on the market without having converse undue effects on the price. Under these circumstances, plaintiff correctly argues that the block of Butler shares herein involved is unique, and because of its size, has no ascertainable market value.

By loss of the stock under the circumstances of disposition proposed by defendant Franklin, plaintiff will, under the foregoing circumstances be irreparably damaged.

The question remains whether plaintiff has shown a reasonable probability of success so as to justify in a balancing of the equities, an injunction in his favor, pending trial, so as to prevent such damages.

Franklin has apparently entered into a letter agreement with defendants Galesi, granting a 60 day option to the Galesis, expiring November 21, 1971, to purchase the Butler stock at a price equal to the market value on the date of execution of the option, but less than the amount owed by the plaintiff to the Bank on that date. The option agreement provides that option purchasers may purchase additional time, up to two weeks, at $333.00 per day, payable before November 21, 1971, and it was represented on oral argument that the option will be exercised but for the intervention of the Court.

The option is unusual, and certain facts concerning its provisions should be noted. The option provides for payment of $17,500.00 to Franklin by the Galesis, to be retained in the event of non-exercise. An additional sum of $32,500.00 shall be paid on the exercise of the option by certified or bank check. The *entire balance* of the option purchase price is to be represented by a promissory note in the amount of $231,000.00 in favor of Franklin and secured by the stock. The note is payable at the rate of $12,500.00 quarter-annually commencing six months from the date, with simple interest at 6%. Interest on the State Court judgment recovered against plaintiff is, of course, currently being imposed at the higher rate of 7½%.

An interesting observation with respect to the option is the provision set

forth therein that purchasers (Galesi) "shall have until 5:00 P.M., Monday, November 21, 1971 to consummate the purchase from you (Franklin) of 51,500 shares of the common stock of Butler Aviation International, Inc. ("Butler stock") *at foreclosure,* which shares were pledged to you by Paul S. Dopp". This had the effect of giving the Galesis actual notice of the equities or rights, if any, of Dopp, and also gives rise to the inference that as of this date the shares remain pledged and that no foreclosure has taken place, nor is any contemplated until November 21, 1971, when, if the option is exercised, defendant Franklin proposes to sell to defendants Galesi "at foreclosure". These words were inserted in the option, presumably by attorneys, *after* the option had been drafted, so the insertion is not meaningless or inadvertent.

At some point after the entry of judgment, Franklin caused the stock to be registered in the name of "Colat & Co.", the nominee of its loan department. Plaintiff judgment debtor is not presently in control of the corporation. There are inadequate facts presently before the Court to permit the required balancing of equities leading to a direction as to how the subject stock should be voted. The Court, therefore, makes no determination as to how same shall be voted and that portion of the application which seeks to enjoin any voting of the stock is denied without prejudice, except that defendant Butler shall, if the stock is voted at any Shareholders Meeting of Butler, separately tally and record the manner in which the shares were voted and by whom, and if plaintiff seeks to vote such shares, such proposed vote, if not allowed shall nevertheless be noted in the record of proceedings of such Shareholders Meeting in order that there may be a full subsequent disposition of the matter by any Court having jurisdiction over the parties and the subject matter of the election of the directors of Butler.

Franklin makes no showing of irreparable damage if the preliminary injunction be granted. Franklin apparently has other collateral of value, and the market price at which the stock is proposed to be sold at to Galesis, particularly in view of the large amount of credit being extended, does not seem to be less than that which could be obtained in an orderly disposition of the stock over the same term as the Galesi note. Plaintiff has submitted the affidavit of one Anstatt, indicating that Anstatt was, at the time of the acts complained of, and is now, ready, willing and able to buy the Butler shares from Franklin or plaintiff at the same price.

Since the temporary restraining order was signed, plaintiff has served and filed an amended complaint. Both sides of this litigation have furnished the Court with excerpts from depositions taken, but the depositions read piecemeal will not permit the Court to determine the merits of the complaint, alternatively to a plenary trial of the fact issues. The depositions do indicate that there is a *bona fide* controversy, and on the whole record the Court finds at least some suggestion to the effect that defendant Franklin is not acting in a "commercially reasonable" manner in the disposition of the collateral in a manner fair to the debtor, as required by Section 9–504(3) of the Uniform Commercial Code, in effect in the State of New York.

By the amended complaint, plaintiff asserts that in January, 1971, plaintiff and defendant Franklin made agreements with respect to the manner in which the default judgment would be discharged, that plaintiff made substantial payments thereunder and that defendant Franklin agreed not to sell the Butler shares without providing plaintiff with notice.

While it is true that no consideration was given for such agreement, it is likewise true that plaintiff continued making sporadic payments and refrained from attempting to pay in full the amount owed, (on which Franklin was continuing to receive 7½% interest), and refrained from purchasing or arranging for the purchase of the Butler

shares by others who might be more friendly to him than the Galesis.

At the very least, apparently Franklin concealed and withheld from plaintiff the fact that it was proposing to grant this option to buy the pledged property on these terms for less than the amount owed thereon, to the Galesis, whose interests in the corporation are apparently inimical to that of plaintiff, who in spite of his status as a judgment debtor, is a substantial shareholder of Butler without regard to this block of shares. This is, of course, disputed, but is a "fair ground for litigation and thus for more deliberate investigation", Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953). In *Hamilton*, under the criterion just quoted, an injunction pending trial was approved.

The facts alleged may sustain a cause of action under the applicable provisions of the Securities Exchange Act of 1934, (15 U.S.C. § 78j). Plaintiff is the beneficial owner of the stock and a pledgor whose stock is being sold is a protected "seller" under the Act. Sup't of Insurance v. Bankers Life & Cas. Co., 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128, decided November 8, 1971; 15 U.S.C. § 78c(14), U.C.C. Sections 2–707, 9–504 (2).

Illuminating is the following entry in Franklin's credit file of plaintiff, under date of September 22, 1971, the very day when plaintiff made a payment on account of $5,000:

Reference is made to my June 9, 1971 file entry detailing the circumstances surrounding my various conversations with Mr. Michael Galesi. Over the last several months, Mr. Galesi has visited my office on various occasions and we have finally negotiated the specifics of his acquiring ·the Butler stock presently held by FNB. The mechanics of the transaction are set forth below:

1. Michael and John Galesi will purchase the 51.5M Butler shares for a total consideration of $281M. It may be noted that this is a per-share-price of $5.-46 which is approximately the present market value however the market in this issue is extremely thin and the block we hold could obviously not be disposed of at that price in any reasonable period of time. Further, the company's past financial problems appear to indicate that even this price may be subject to drastic fluctuations.

2. The purchase price will be paid at $50M cash with a $231M installment note made by Michael and John Galesi payable $12.5M quarterly with interest at 6%. We are to be provided with personal financial statements of the individuals satisfactory to FNB and we will retain the 51.5M shares of Butler as collateral.

3. *The judgment we hold against Dopp will be assigned to a third party so that it will be available as a means to prevent Dopp from initiating any legal harassment.*

4. Today, we have received $17.5M of the $50M down payment with this former amount representing a non-refundable option price to November 21, 1971. The stated purpose of this is to allow the Galesis sufficient time to receive SEC confirmation that the stock in question is in fact free of restrictions and not subject to control provisions.

*Meanwhile, Dopp continues to make payments under the judgment with a $5M remittance (copy in file) received today. I am informed by counsel that we can continue to accept such payments and that the contemplated transaction with the Galesis is legally unassailable.* The anticipated course of events will permit the recovery of principal, interest and legal fees with the further advantages of (1) a substantial cash payment (2) the substitution of two financially responsible individuals for Dopp; and

(3) retention of the same collateral security now held. (Italics added.)

Based on the foregoing, plaintiff shows reasonable probability of success. Accordingly, the motion by Order to Show Cause dated October 18, 1971 is granted to the extent that defendants Franklin and Galesi are enjoined pending the trial of this action or the further order of the Court, from selling or transferring the shares of Butler referred to herein, belonging to the plaintiff or taking any steps or proceedings to perform the Option Agreement with respect to such shares above mentioned. That portion of the motion directed to the voting of the stock shall be disposed of in accordance with this Memorandum, as previously set forth. The security in the amount of $25,000.00 previously deposited pursuant to the temporary restraining order dated October 18, 1971 is increased to $50,000.00, with such additional security to be filed with the Order to be entered hereon. It is hereby ordered that the temporary restraining order is continued in effect until the entry of such Order.

Settle Order on five days' notice.